# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ISAAC RASHAD ROBINSON,** ] | |
| ] | |
| **Movant,** ] | |
| ] | |
| v. ] | Case No.: 2:22-cv-8011-ACA |
| ] | |
| **UNITED STATES OF AMERICA** ] | |
| ] | |
| **Respondent.** ] | |

## MEMORANDUM OPINION

Movant Isaac Rashad Robinson, proceeding *pro se*, moves to vacate his sentence under 28 U.S.C. § 2255, alleging that trial counsel was ineffective for failing to make an appointment for Mr. Robinson to provide the government with information that would have warranted application of the safety valve and reduced his sentence. (Doc. 1 at 4–5). Because the motion is meritless, the court **WILL DENY** it. The court also **WILL DENY** Mr. Robinson a certificate of appealability.

**I.     BACKGROUND**

1.  Underlying Criminal Proceedings

In 2019, a grand jury issued a superseding indictment charging eighteen codefendants, in various combinations, with fifty-eight crimes arising out of a drug conspiracy. *United States v. Robinson*, case no. 19-cr-00466, doc. 19 (N.D. Ala. Oct.

29, 2019).¹ Mr. Robinson was charged in three of the counts: one count of conspiracy to possess with the intent to distribute and to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C.§§ 846, 841(a)(1), one count of possession with the intent to distribute fifty grams or more of methamphetamine, in violation of § 841(a)(1), and one count of use of a communication facility to facilitate the commission of a felony, in violation of 21 U.S.C. § 843(b). (*Id.* at 3–4, 16–17, 18–19).

Mr. Robinson pleaded guilty to all three counts pursuant to a plea agreement. (*Robinson* doc. 235; *Robinson* minute entry for Sept. 30, 2020). The factual basis for the conspiracy charge described, in general terms, visits codefendants made to Mr. Robinson's house "for drug transactions." (*Robinson* doc. 235 at 3–4). The factual basis for the possession charge described controlled buys of methamphetamine at Mr. Robinson's house and a search of his house that revealed almost 500 grams of methamphetamine. (*Id.* at 4). And the factual basis for the telephone charge described a phone call one of Mr. Robinson's codefendants made to another codefendant from Mr. Robinson's house, in which the two codefendants discussed a drug deal, followed by a phone call Mr. Robinson made to facilitate the drug deal between his codefendants. (*Id.* at 4–5).

---

¹ The court will refer to any documents filed in Mr. Robinson's underlying criminal case as "*Robinson* doc. ___." The court will refer to any documents filed under this case number as "doc. __."

In the plea agreement, Mr. Robinson acknowledged that the mandatory minimum sentences for two of his charges was ten years' imprisonment, that at least 4.5 kilograms of methamphetamine was attributable to him for the conspiracy charge, and that he was responsible for 493.5 grams of methamphetamine for the possession charge. (*Robinson* doc. 235 at 2–4). The plea agreement contained a cooperation section in which Mr. Robinson agreed to provide truthful and complete information about his "role and participation in the offenses, as well as the roles and the participation of all other persons involved in these crimes of whom the defendant has knowledge." (*Id.* at 6). The agreement did not address the safety valve, but it did address a potential motion to depart below the mandatory minimum or the advisory guidelines range, under 18 U.S.C. § 3553(e) and United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1, if Mr. Robinson provided "substantial assistance." (*Id.* at 7–8).

Like the plea agreement, Mr. Robinson's presentence investigation report noted that he faced a mandatory minimum term of ten years' imprisonment on two of the charges. (*Robinson* doc. 338 at 46 ¶ 195). The presentence investigation report recommended that, under U.S.S.G. § 2D1.1(c)(1), the court assign a base offense level of 38 to Mr. Robinson. (*Id.* at 39). But it did not recommend giving a two-level safety valve decrease under § 2D1.1(b)(18) because that adjustment required the defendant to provide truthful information about the offense or offenses, and the

3

government stated Mr. Robinson had not done so. (*Id.* at 40). The report did, however, state that "[i]t has been indicated that the government intends to meet with Robinson, so he can provide the requisite information." (*Id.*). With a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, Mr. Robinson's recommended total offense level was 35. (*Robinson* doc. 338 at 40). Combined with Mr. Robinson's criminal history category of I, the recommended guidelines range was 168 to 210 months. (*Id.* at 46).

Mr. Robinson did not object to the presentence investigation report, either in writing or at the sentencing hearing. (*See Robinson* doc. 440 at 3). At the hearing, the court adopted the recommendations set out in the presentence investigation report. (*Id.* at 4). Mr. Robinson spoke briefly to apologize to his family and friends. (*Id.* at 12). The government then recommended a sentence of 168 months, at the lowest end of the advisory guidelines range. (*Id.* at 13).

The court sentenced Mr. Robinson to 168 months on the conspiracy and possession charges and 24 months on the telephone charge, all to run concurrently. (*Robinson* doc. 440 at 15–16). The court explained that, given the quantity of drugs involved in the case, it did not "think this is a low end case," but that Mr. Robinson's demonstrated commitment to his family and his family's commitment to him made 168 months "the lowest of the low end." (*Id.* at 15). Given Mr. Robinson's health,

his history of compliance with the court's orders, and his family support, the court allowed him to self-report to prison. (*Id.* at 20–21).

On March 4, 2021, the court entered its judgment consistent with the oral pronouncement of sentence. (*Robinson* doc. 339). Mr. Robinson did not appeal.

2. Filing of the § 2255 Motion

On April 18, 2022, the court received Mr. Robinson's *pro se* 28 U.S.C. § 2255 motion, which he purported to sign on February 17, 2022. (Doc. 1 at 13). The § 2255 motion asserts only one ground for relief: that Mr. Robinson's trial counsel was ineffective for failing to arrange a meeting with the government so that Mr. Robinson could provide substantial assistance, making him eligible for a two-level reduction to his offense level under § 2D1.1(b)(18) and lowering his advisory guidelines range to 135 to 168 months' imprisonment. (*See id.* at 4).

3. Evidence and Evidentiary Hearing

The government challenged both the timeliness and the merits of Mr. Robinson's motion. (Doc. 3). Given disputes of fact about both issues, the court appointed counsel for Mr. Robinson and set the case for an evidentiary hearing. (*See* doc. 11). Although the parties presented testimony about the timeliness issue, the court has determined that addressing timeliness is unnecessary because the motion fails on the merits. As a result, the court will not discuss the evidence about when

Mr. Robinson signed his § 2255 motion but will instead focus on the evidence about the merits of his claim.

Mr. Robinson testified that after trial counsel was appointed, they discussed possible sentences. At their first meeting, they discussed a § 5K1.1 motion for a downward departure based on substantial assistance. Mr. Robinson told counsel he "did not want to talk, or talk about anybody, you know, that I, you know, on the case, off the case, I ain't want to talk. I told [counsel] no."

According to Mr. Robinson, he and trial counsel discussed the safety valve at their second meeting. Trial counsel told him that, based on a starting point of ten years, reduced by the safety valve, "good time," and the residential drug abuse program ("RDAP"), Mr. Robinson might receive of sentence of "around sixty months." Mr. Robinson repeatedly testified that, based on this discussion, he thought that, unlike a § 5K1.1 proffer, a safety valve proffer would be him "basically talking about the offenses [he was] involved in."

Mr. Robinson told trial counsel "more than once" that he wanted to make a safety valve proffer. Trial counsel indicated on several occasions that he was working on setting a date for Mr. Robinson to do so. And at Mr. Robinson's interview for the presentence investigation report, trial counsel told the probation officer that they were "waiting on a date."

When asked why Mr. Robinson did not bring up the lack of a safety valve reduction at his sentencing hearing, he testified that he "didn't know what objection—I didn't know, you know what I'm saying, it—I put my faith in [counsel's] hand. He—he didn't speak up for me." He explained that he did not bring up the safety valve during his allocution because he did not "think that was the time to speak up for that." And he stated he did not mention it when the court was explaining his appellate rights because he "was thinking about all the time [he] had got." When the government reiterated that Mr. Robinson "sat silent that day at [his] sentencing and didn't mention safety valve," Mr. Robinson said: "I was finished. I felt like it was time to apologize to my people. I had just got one hundred sixty-eight months, I wasn't thinking about nothing else but not seeing my folks for a good bit of time."

Trial counsel also testified at the evidentiary hearing. According to counsel, he discussed a safety valve proffer with Mr. Robinson, but Mr. Robinson "always said [he was] not interested in cooperating" because "he didn't want to tell on anybody else . . . . Mr. Robinson was always adamant that he did not want to implicate anyone else."

The court finds, based on Mr. Robinson's testimony and his demeanor and filings, that Mr. Robinson believes a safety valve proffer involves offering information only about himself. The court accepts Mr. Robinson's testimony that he

told trial counsel he was willing to provide information about himself, but also accepts trial counsel's testimony that Mr. Robinson stated he would not provide information about anyone else.

## II.   DISCUSSION

The government contends that the court should deny Mr. Robinson's § 2255 motion because it is untimely and because he cannot establish ineffective assistance of counsel. (Doc. 3 at 8–14; doc. 9 at 4). Because this motion fails on the merits, the court will not address the arguments about timeliness.

Mr. Robinson asserts that trial counsel was ineffective because he failed to set a debriefing meeting with the government so that Mr. Robinson could provide substantial assistance and get the benefit of a two-level reduction in his offense level, under U.S.S.G. § 2D1.1(b)(18). (Doc. 1 at 4–5).

To prevail on a claim of ineffective assistance of counsel, Mr. Robinson must demonstrate both that (1) his counsel's performance fell below an objective standard of reasonableness and (2) he suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 684–91 (1984). Counsel's performance is deficient only if it "was outside the wide range of professionally competent assistance." *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (quotation marks omitted). To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Strickland*, 466 U.S. at 694. For Mr. Robinson, this requires him to show a reasonable probability that, but for counsel's performance, he would have received a lower sentence. *See Glover v. United States*, 531 U.S. 198, 202–04 (2001). Mr. Robinson cannot make either showing.

A defendant seeking a two-level reduction to his offense level under § 2D1.1(b)(18) must "truthfully provide[ ] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 2D1.1(b)(18), cross-referencing *id.* § 5C1.2(a)(5). The phrase "offense or offenses that were part of the same course of conduct or of a common scheme or plan" means "the offense of conviction and all relevant conduct." *Id.* cmt. n.3. When dealing with a conspiracy charge, "relevant conduct" includes "all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." *Id.* § 1B1.3(a)(1)(B). The Eleventh Circuit has called § 1B1.3(a)(1)(B) "a 'tell-*all*' provision." *United States v. Johnson*, 375 F.3d 1300, 1302 (11th Cir. 2004). A defendant seeking safety valve relief must "come forward and . . . supply truthfully to the government all the information that he possesses about his involvement in the offense, including information relating to the

involvement of others and to the chain of the narcotics distribution." *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997).

The court has found that Mr. Robinson was willing to tell the government about his own conduct, but not about anyone else's. Given his unwillingness to provide the complete information required to satisfy § 5C1.2(a)(5), trial counsel did not perform deficiently by failing to set a specific date for the government to interview Mr. Robinson or by failing to submit a written proffer from Mr. Robinson. *See Johnson*, 643 F.3d at 928–29.

Mr. Robinson attempts to show his willingness to proffer by pointing to the factual basis in his plea agreement, which describes actions taken by some of his codefendants. (Doc. 22 at 27). But there is no indication that the government acquired that information from Mr. Robinson. (*See Robinson* doc. 235 at 3–5). To the contrary, none of it appears to come from information provided by Mr. Robinson or any other codefendant in the case, instead appearing to be information discovered through the government's own investigation. (*See id.*).

Mr. Robinson also argues that because the presentence investigation report included an extensive description of the activities of his codefendants, "[h]e probably couldn't have told the government anything new," so he would have lost nothing by telling the government what he did know. (Doc. 22 at 27–28). As the government concedes, providing evidence that is not useful or that the government

already has can still qualify for safety valve relief. *See* U.S.S.G. § 5C1.2(a)(5); (doc. 17-5 at 1 n.1; *id.* ¶ 3). But although that would have been a logical approach, Mr. Robinson repeatedly testified during this proceeding that he was not willing to give information about anyone but himself. He did not offer any caveats or exceptions to that rule. The court finds that Mr. Robinson was not willing to make a proffer that would have qualified for safety valve relief. As a result, trial counsel did not perform deficiently by failing to arrange for Mr. Robinson to either meet with the government or submit a written proffer. *See Johnson*, 643 F.3d at 928.

Nor can Mr. Robinson establish prejudice. To show prejudice, he would need to show (1) that he was entitled to the two-level reduction under § 2D1.1(b)(18); and (2) that the court would have sentenced him to a lower sentence than the one he received. He cannot make either showing.

To show entitlement to the two-level reduction, Mr. Robinson has to establish that, had he made the required proffer, he would have provided to the government "all information and evidence [he had] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(5). As the court has found, Mr. Robinson was and remains unwilling to provide information about anyone but himself.

But even if Mr. Robinson had convinced the court that he was willing to proffer information about other people, he has not provided this court with the

proffer he would have made if he had had the opportunity to do so. Without such a proffer, the court cannot determine whether the information he would have provided was truthful and complete, such that he might have been entitled to the § 2D1.1(b)(18) reduction. *Cf. Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002) (pointing out that a § 2255 movant must allege "reasonably specific, non-conclusory facts that, if true, would entitle him to relief"). Mr. Robinson cannot make the first showing required to establish prejudice.

Even if he could make that showing, he cannot show that, faced with a lower advisory guidelines range, the court would have given him a lower sentence. *See Glover*, 531 U.S. at 202–04. The United States Supreme Court has held, in the context of plain error review on direct appeal, that "[i]n most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016). The Eleventh Circuit has held that such an error can satisfy the *Strickland* prejudice prong. *Griffith v. United States*, 871 F.3d 1321, 1337–38 (11th Cir. 2017). Accordingly, application of a higher offense level (and resulting advisory guidelines range) can satisfy *Strickland*'s prejudice prong. But both the Supreme Court in *Molina-Martinez* and the Eleventh Circuit in *Griffith* pointed out that this is not a *per se* rule establishing prejudice because

> [t]he record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range. Judges may find that some cases merit a detailed explanation of the reasons the selected sentence is appropriate. And that explanation could make it clear that the judge based the sentence he or she selected on factors independent of the Guidelines.

*Molina-Martinez*, 578 U.S. at 200; *see also Griffith*, 871 F.3d at 1338–39.

The undersigned imposed the sentence on Mr. Robinson. At sentencing, the court stated that it considered 168 months to be "the lowest of the low end" given the quantity of drugs involved in the case. (*Robinson* doc. 440 at 15); *see, e.g.*, *Molina-Martinez*, 578 U.S. at 200 (explaining, in the context of a direct appeal, that even plain error in calculating the guidelines range might not warrant finding a reasonable probability of a different outcome if the record "show[s], for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range"). The undersigned remains convinced that a sentence of 168 months was the lowest appropriate sentence given the quantity of drugs involved. Even if the court had applied the two-level reduction appropriate and been faced with an advisory guidelines range of 135 to 168 months—even if the government had, consistent with its promise in the plea agreement, recommended a low-end sentence of 135 months' imprisonment—the court would still have imposed a sentence of 168 months. Mr. Robinson therefore cannot show that any failure on his attorney's part prejudiced him at sentencing. As a result, the court **WILL DENY** Mr. Robinson's § 2255 motion.

## III. CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2255 Cases requires the court to issue or deny a certificate of appealability when the court enters an order adverse to the movant. Rules Governing Section 2255 Cases, Rule 11(a). This court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "[movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks omitted). The court finds that Mr. Robinson has not satisfied either standard. Accordingly, the court **WILL DENY** a certificate of appealability.

## IV. CONCLUSION

The court **WILL DENY** Mr. Robinson's § 2255 motion as time-barred and, in the alternative, on the merits. The court **WILL DENY** Mr. Robinson a certificate of appealability.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this October 24, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE